1    **WO**

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                        **FOR THE DISTRICT OF ARIZONA**

9
     Robert Allen Poyson,                    )    No. CV 04-0534-PHX-NVW
10                                            )
                    Petitioner,               )    DEATH PENALTY CASE
11                                            )
     vs.                                      )
12                                            )
                                              )    **ORDER RE: MOTIONS FOR RECORD**
13   Dora Schriro, et al.,                    )    **EXPANSION, DISCOVERY, AND AN**
                                              )    **EVIDENTIARY HEARING**
14                  Respondents.              )
                                              )
15   _____ )

16          Petitioner Robert Allen Poyson is a state prisoner sentenced to death seeking habeas

17   corpus relief pursuant to 28 U.S.C. § 2254.  Before the Court are Petitioner's motions for

18   expansion of the record, discovery, and an evidentiary hearing.  (Dkts. 40, 41.)[1]  Petitioner

19   requests evidentiary development with regard to six of his claims: 1, 5, 6, 7, 21, and 22.

20   Respondents filed responses, and Petitioner filed replies.  (Dkts. 45, 46, 52, 53.)

21          Pursuant to the Court's general procedures governing resolution of capital habeas

22   proceedings, the parties have completed briefing of both the procedural status and the merits

23   of Petitioner's claims.  Therefore, the Court will first determine whether the claims for which

24   Petitioner seeks evidentiary development are appropriate for review on the merits by a

25   federal habeas court.

26

27   _____

28          [1]  "Dkt." refers to the documents in this Court's case file.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 1998, a jury convicted Petitioner of three counts of first degree murder, one count of conspiracy to commit first degree murder, and one count of armed robbery in connection with the August 1996 deaths of Leta Kagen, her fifteen-year-old son, Robert Delahunt, and Roland Wear.  Mohave County Superior Court Judge Steven F. Conn sentenced Petitioner to death for the murders and to terms of imprisonment for the other counts.[2]  The details of the crime are set forth in the Arizona Supreme Court's decision upholding Petitioner's convictions and sentences.  State v. Poyson, 198 Ariz. 70, 7 P.3d 79 (2000).  The following is a synopsis of the facts drawn from the state court's decision as well as this Court's review of the record.

Petitioner, then nineteen years old, was invited by Kagen to stay with her, Delahunt and Wear in their trailer near Kingman, Arizona.  Several months later, Kagen met Frank Anderson and his fourteen-year-old girlfriend, Kimberly Lane, who also needed a place to stay; Kagen offered her trailer.  Anderson told Petitioner that he was eager to travel to Chicago, where he claimed to have ties to an organized crime organization.  Needing transportation, Anderson, Petitioner, and Lane formulated a plan to kill Kagen, Delahunt, and Wear to steal Wear's truck. With Lane's assistance, Delahunt was lured to a travel trailer and brutally attacked by Anderson and Petitioner; Delahunt eventually died of blunt force head trauma.  After Kagen and Wear were asleep, Petitioner shot Kagen in the head with a rifle, killing her instantly.  Petitioner then shot Wear, but a struggle ensued and Petitioner and Anderson resorted to clubbing Wear to death with the rifle and a cinder block.

---

[2]   Co-defendant Frank Anderson was convicted of the same charges and also sentenced to death.  State v. Anderson, 210 Ariz. 327, 111 P.3d 369 (2005), supplemented by State v. Anderson, 211 Ariz. 59, 116 P.3d 1219 (2005).  His convictions were overturned on appeal because the trial court failed to permit defense counsel to attempt to rehabilitate jurors who had indicated an opposition to the death penalty.  Id. at 334, 111 P.3d at 376.  On retrial, he was again convicted on all counts and sentenced to death.  Id.  Co-defendant Kimberly Lane entered into a plea agreement concerning her participation in the crime.  Id. at 357, 111 P.3d at 399.

1   Following his unsuccessful direct appeal, Petitioner filed a petition for certiorari,

2   which was denied.  <u>Poyson v. Arizona</u>, 531 U.S. 1165 (2001).  In 2002, Petitioner filed in

3   state court a petition for post-conviction relief (PCR) and a supplemental petition pursuant

4   to Rule 32 of the Arizona Rules of Criminal Procedure.  Without holding an evidentiary

5   hearing, the PCR court denied relief.  In March 2004, the Arizona Supreme Court summarily

6   denied a petition for review.  Thereafter, Petitioner initiated the instant habeas proceedings.

7   Because this case was filed after April 24, 1996, it is governed by the Antiterrorism and

8   Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA).  <u>Lindh v. Murphy</u>, 521

9   U.S. 320, 336 (1997); <u>Woodford v. Garceau</u>, 538 U.S. 202, 210 (2003).

10   **PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

11   The AEDPA requires that a writ of habeas corpus not be granted unless it appears that

12   the petitioner has properly exhausted all available state court remedies.  28 U.S.C. §

13   2254(b)(1); <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991); <u>Rose v. Lundy</u>, 455

14   U.S. 509 (1982).  To properly exhaust state remedies, the petitioner must "fairly present" his

15   claims to the state's highest court in a procedurally appropriate manner.  <u>O'Sullivan v.</u>

16   <u>Boerckel</u>, 526 U.S. 838, 848 (1999).

17   A claim is "fairly presented" if the petitioner has described the operative facts and the

18   federal legal theory on which his claim is based so that the state courts have a fair

19   opportunity to apply controlling legal principles to the facts bearing upon his constitutional

20   claim.  <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Picard v. Connor</u>, 404 U.S. 270, 277-78

21   (1971).[3]  If a petitioner's habeas claim includes new factual allegations not presented to the

22   state court, the claim may be considered unexhausted if the new facts "fundamentally alter"

23   the legal claim presented and considered in state court.  <u>Vasquez v. Hillery</u>, 474 U.S. 254,

24   _____

25   [3] Resolving whether a petitioner has fairly presented his claim to the state court, thus
permitting federal review, is an intrinsically federal issue which must be determined by the

26   federal court.  <u>Wyldes v. Hundley</u>, 69 F.3d 247, 251 (8th Cir. 1995); <u>Harris v. Champion</u>, 15

27   F.3d 1538, 1556 (10th Cir. 1994).

28

260 (1986).

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. <u>Coleman</u>, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in any forum and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." <u>Id.</u> at 735 n.1. This is often referred to as "technical" exhaustion – although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 161-62 (1996) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

Rule 32 of the Arizona Rules of Criminal Procedure governs when petitioners may seek relief in post-conviction proceedings and raise federal constitutional challenges to their convictions or sentences in state court. Rule 32.2 provides, in part:

> a. Preclusion. A defendant shall be precluded from relief under this rule based upon any ground:
> . . . .
>
> (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
>
> *(3) That has been waived at trial, on appeal, or in any previous collateral proceeding.*
>
> b. Exceptions. Rule 32.2(a) shall not apply to claims for relief based on Rules 32.1(d), (e), (f), (g) and (h). When a claim under [these sub-sections] is raised in a successive or untimely petition, the petition must set forth the reasons for not raising the claim in the previous petition or in a timely manner. If meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the petition shall be summarily dismissed.

Ariz. R. Crim. P. 32.2 (2002) (emphasis added). Thus, pursuant to Rule 32.2, petitioners may not be granted relief on any claim which could have been raised in a prior Rule 32

- 4 -

petition for post-conviction relief.  Similarly, pursuant to Rule 32.4, petitioners must seek relief in a timely manner.  Only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or was not presented in a timely manner will the preclusive effect of Rule 32.2 be avoided.  Ariz. R. Crim. P. 32.2(a) (3), 32.4(a).

Therefore, in the present case, if there are claims which have not been raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32.  If no remedies are currently available, petitioner's claims are "technically" exhausted but procedurally defaulted.  Coleman, 501 U.S. at 732, 735 n.1.  In addition, if there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims also will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review.  Harris v. Reed, 489 U.S. 255, 262 (1989).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims.  Reed v. Ross, 468 U.S. 1, 9 (1984).  As a general matter, the Court will not review the merits of procedurally defaulted claims unless a petitioner demonstrates legitimate cause for the failure to properly exhaust in state court and prejudice from the alleged constitutional violation.  Coleman, 501 U.S. at 735 n.1.  Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Id.. at 753.  "Prejudice" is actual harm resulting from the alleged constitutional error.  Magby v. Wawrzaszek, 741 F.2d 240, 244 (9th Cir. 1984).  If a petitioner cannot meet the cause and prejudice standard, the Court still may hear the merits of procedurally defaulted claims if the failure to hear the claims would constitute a "fundamental miscarriage of justice."  Sawyer v. Whitley, 505 U.S. 333 (1992).

## **PROCEDURAL STATUS OF CLAIMS**

The Court reviews the procedural status of the claims for which evidentiary development is sought: Claims 1, 5, 6, 7, 21, and 22.  Respondents contend that all but a portion of Claim 1 are procedurally barred.  (Dkt. 30 at 1.)

### **Claim 1**

Petitioner alleges that his statements to police were not voluntary. (Dkt. 27 at 31-38.) Respondents concede that Claim 1 is exhausted except to the extent Petitioner alleges involuntariness due to "neurological impairments consistent with Fetal Alcohol Spectrum Disorder" (FASD).  (Dkt. 27 at 33; Dkt. 30 at 30-31.)  Petitioner concedes that his FASD allegation was not raised in state court but argues that it does not fundamentally alter the claim presented on direct appeal. (Dkt. 39 at 27.)  See Vasquez. v. Hillery, 474 U.S. at 260 (holding that new factual allegations presented for the first time in federal habeas may render a claim unexhausted if the new facts "fundamentally alter" the legal claim presented in state court).  Regardless of exhaustion, the Court finds that Claim 1 is plainly meritless.  See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277 (2005) (observing that "plainly meritless" unexhausted claims are subject to dismissal under 28 U.S.C. § 2254(b)(2)).

### ***Relevant Facts***

Following his arrest the evening of August 23, 1996, at a homeless shelter in Illinois, Petitioner was questioned by police three times over a 24-hour period and made incriminating statements.  The first interview was conducted by Illinois State Police Sgt. Ralph Stegall at 10:40 p.m. and lasted approximately two hours.  (RT 7/25/97 at 32, 39.)[4]

---

[4] Pertinent parts of the state court record consist of the trial reporters' transcripts ("RT"); a two-volume Record on Appeal ("ROA doc.") containing a consecutively-numbered set of pleadings and a one-volume set of Minute Entries ("M.E.") prepared by the Clerk of the Mohave County Superior Court for the direct appeal (Case No. CR-98-0510-AP; filed Jan. 8, 1999); a four-volume Record on Appeal ("PCR-ROA") prepared by the Clerk of the Mohave County Superior Court for the petition for review from the denial of the PCR petition (Case No. CR-03-0084-PC; filed Aug. 26, 2003) (labeled as "Volumes VII - X");

1   Stegall, with Illinois State Police Sgt. Jeffrey Hedrich sitting in, lead a second interview two

2   hours later, at 2:55 a.m., which lasted for thirty minutes.  (Id. at 17, 40.)  In between the first

3   and second interviews, Petitioner was provided a soda, cigarette, and cheeseburger; he was

4   returned to his cell to sleep following the second interview.  (Id. at 38, 64.)  The third

5   interview, which began around 8:30 p.m. the next evening and lasted two hours, was

6   conducted by Det. Eric Cooper, from Arizona, and Sgt. Stegall.  (Id. at 59; RT 8/21/97 at 6.)

7   Only this final interview was recorded.  (Id. at 7; Dkt. 32, Ex. V.)

8          Prior to trial, counsel moved to suppress all three statements, arguing that none were

9   voluntary and the third was taken in violation of Miranda.  (ROA doc. 28 at 10.)  With

10   respect to voluntariness, counsel pointed to Petitioner's low intelligence and asserted that he

11   had been tired, frightened, and depressed, and not permitted to drink, eat, smoke, or use the

12   bathroom.  The motion further stated that the interrogation atmosphere was coercive;

13   specifically, the room was small, Petitioner was handcuffed to a wall, and the interviewing

14   officers were intimidating.

15         The trial court held a multi-day hearing over several months on Petitioner's

16   suppression motion.  (RT 7/25/97; RT 8/21/97; RT 11/24/97.)  The extended nature of the

17   hearing was in part attributed to defense counsel's successful request for psychological

18   evaluations of Petitioner; the trial court noted that such evaluations could be relevant to the

19   issue of voluntariness.  (RT 8/21/97 at 38.)  The Illinois police officers, Det. Cooper, and

20   Petitioner testified at the suppression hearing.  In its ruling denying Petitioner's motion, the

21   trial court first noted that there were no Miranda issues with respect to the first and second

22   statements.  (RT 11/24/97 at 65.)  As to voluntariness, the court found that, even taking

23   Petitioner's testimony at face value, the statements were not the product of intimidation,

24   coercion, threats, or promises.  (Id. at 66-67.)  Regarding the third statement, the court

25

26   and copies of the Arizona Supreme Court's direct appeal and petition for review dockets

27   ("DA doc." and "PR doc.").  The original trial transcripts and certified copies of the state
     court records were provided to this Court by the Arizona Supreme Court.  (See Dkt. 36.)

28

1    expressly found that Det. Cooper had read Petitioner his <u>Miranda</u> rights before the tape

2    recorder was turned on and that the tape was devoid of any suggestion that Petitioner had

3    been intimidated, threatened, or coerced by the officers.  (Dkt. 32, Ex. S.)  "[Petitioner]

4    appeared more than willing to discuss the incident at great length and seemed motivated by

5    a desire to clear his conscience and accept the consequences for what he had done."  (<u>Id.</u> at

6    2.)  "The tone of his voice, his manner during the interview and the details provided indicate

7    that any shortage of sleep prior to the interview was not a relevant factor."  (<u>Id.</u>)

8           On direct appeal, the Arizona Supreme Court likewise concluded that Petitioner's

9    statements were voluntary:

10       Defendant relies on his allegedly vulnerable mental state at the time of the
     statements.  He emphasizes that he was depressed and remorseful when he
11   made them.  Defendant also cites his age (twenty at the time of the
     confessions), his "low average intelligence," and his fright at being
12   interrogated by the police.  He does not, however, point to any evidence in the
     record indicating that the officers exploited his remorse, his age, or his fear to
13   gain a confession.  In fact, we find no suggestion of police overreaching.  The
     three interviews were not long, and occurred over a twenty-four hour period.
14   One lasted only thirty minutes.  The others were each about two hours in
     length.  We find no indication that the questioning was particularly intense or
15   marked by coercion.  The officers scrupulously advised the defendant of his
     <u>Miranda</u> rights.  Although handcuffed, he could comfortably sit or stand as he
16   chose.  <u>See</u> <u>United States v. Elie</u>, 111 F.3d 1135, 1144 (4th Cir.1997) (noting
     that handcuffing alone does not establish involuntariness).  The officers never
17   denied the defendant an opportunity to eat, drink, smoke, or use the bathroom.
     In fact, they made sure those needs were taken care of while he was in their
18   custody.

19   <u>Poyson</u>, 198 Ariz. at 75, 7 P.3d at 84.

20   ***Analysis***

21          Pursuant to the AEDPA, Petitioner is not entitled to relief on any claim adjudicated

22   on the merits in state court unless that adjudication:

23       (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme
24   Court of the United States; or

25       (2) resulted in a decision that was based on an unreasonable determination of
     the facts in light of the evidence presented in the State court proceeding.
26

27   28 U.S.C. § 2254(d).  The question of whether Petitioner's inculpatory statements were

28                             - 8 -

voluntary is a mixed question of law and fact. See Miller v. Fenton, 474 U.S. 104, 111-12 (1985). As such, the state court's legal conclusion must be separated from the factual determinations underlying it. Lambert v. Blodgett, 393 F.3d 943, 977-78 (9th Cir. 2004). "Fact-finding underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and (e)(1), while the state court's conclusion as to the ultimate legal issue – or the application of federal law to the factual finding – is reviewed per § 2254(d)(1)." Id.

Petitioner asserts summarily in the opening paragraph of Claim 1 that the Arizona Supreme Court's ruling was based on an unreasonable determination of the facts as adduced at the suppression hearing. (Dkt. 27 at 32.) However, he does not identify any alleged factual dispute or factual errors by the state court. Rather, the remainder of Claim 1 focuses on Petitioner's contention that the interrogating officers engaged in a police practice known as "question first," which was condemned by the Supreme Court in Missouri v. Seibert, 542 U.S. 600, 610 (2004). (Dkt. 27 at 36-38.) Petitioner argues that use of this technique, combined with his alleged FASD-related neurological impairments, rendered his statements involuntary because he had "no free and rational choice either to talk to [Det.] Cooper or to remain silent." (Id. at 38.) The Court disagrees.

In Seibert, a plurality of the Court ruled that Miranda warnings given in the midst of a coordinated and continuing interrogation are "likely to mislead and deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." 542 U.S. at 613-14 (internal citation omitted). The case involved a police officer who followed an interrogation protocol that calls for giving no warnings until questioning has produced a confession; the officer then follows up with warnings and leads the suspect to repeat the incriminating statement. In Seibert, the defendant was questioned without Miranda warnings for 30 to 40 minutes. After incriminating herself, she was given a 20-minute coffee and cigarette break, after which the police officer turned on a tape recorder, gave Miranda warnings, obtained a signed waiver, and resumed questioning with the statement, "Ok . . . we've been talking for a little while about what happened . . . ." Id.

1    at 604-05.  The defendant then repeated the inculpatory admission.

2            As already noted, Petitioner does not explicitly identify in the body of his petition any

3    factual errors by the state court.  However, his <u>Seibert</u> argument rests on the assumption that

4    he was not provided <u>Miranda</u> warnings prior to the first and second interviews, despite

5    explicit findings by both the trial and supreme courts that such warnings were given.  In a

6    footnote, Petitioner states: "But for [Sgt.] Stegall's bare and self-serving assertions, the

7    record is silent as to whether he gave Petitioner the <u>Miranda</u> warnings before beginning the

8    first two interviews."  (Dkt. 27 at 36 n.219.)  The record is far from silent.  During the

9    suppression hearing, Sgt. Stegall testified that he advised Petitioner of his <u>Miranda</u> rights by

10   reading them from a pre-printed form, which Petitioner signed twice, once before each

11   interview.  (RT 7/25/97 at 33-36.)  Sgt. Hedrich, who witnessed the second interview,

12   testified similarly.  (<u>Id.</u> at 16.)  The form was identified and admitted into evidence without

13   objection by defense counsel, and no contrary evidence was proffered during Petitioner's

14   testimony at the hearing.  (<u>Id.</u> at 34.)  Indeed, Petitioner at no point during the state

15   proceedings alleged that he failed to receive proper <u>Miranda</u> warnings before the first and

16   second interviews; his <u>Miranda</u> argument was limited solely to the third interview.  Based

17   on this record, the trial and supreme courts' fact findings are not objectively unreasonable,

18   and Petitioner does not offer any evidence to overcome the presumption of correctness.  <u>See</u>

19   28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be

20   presumed to be correct.  The applicant shall have the burden of rebutting the presumption of

21   correctness by clear and convincing evidence.").

22           Moreover, Petitioner's third statement to Det. Cooper was not part of a "coordinated

23   and continuing interrogation."  542 U.S. at 613.  The questioning occurred seventeen hours

24   after being interviewed by the Illinois State Police, after Petitioner was returned to his cell

25   and slept for a number of hours.  Because Petitioner received <u>Miranda</u> warnings before each

26   of the first two interviews and because Petitioner's third statement was not part of a

27   continuing interrogation, <u>Seibert</u> is inapplicable.  Petitioner presents no other arguments

28                                              - 10 -

1  concerning the voluntariness of his statements, and this Court concludes, from its review of

2  the record, that the state court's voluntariness ruling was neither contrary to, nor involved an

3  unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

4  Accordingly, Petitioner is not entitled to relief on Claim 1.

5      **Claim 5**

6      Petitioner asserts that he received ineffective assistance of counsel (IAC) in violation

7  of his rights under the federal Constitution because trial counsel:  (A) failed to timely

8  examine a bloody palm print prior to trial; (B) failed to obtain experts to establish a mental

9  state defense and challenge the voluntariness of his statements to police; (C) was rendered

10 *per se* ineffective by a duplicitous indictment; (D) failed to challenge the indictment as

11 defective; and (E) failed to move for a mistrial after a venire member made a prejudicial

12 statement in the presence of the venire. (Dkt. 27 at 54-67.) Respondents contend that all five

13 allegations are procedurally defaulted.  (Dkt. 30 at 61.)

14      ***Allegations A, B, and E***

15      Respondents concede that allegations A, B, and E were fairly presented in Petitioner's

16 PCR petition, but contend they are procedurally defaulted because Petitioner failed to include

17 them in his petition for review to the Arizona Supreme Court.  (Id.)  See O'Sullivan v.

18 Boerckel, 526 U.S. at 848; Swoopes v. Sublett, 196 F.3d 1008 (9th Cir. 1999) (per curiam)

19 (holding that capital prisoners must seek review in Arizona Supreme Court to exhaust

20 claims).  The Court disagrees.

21      Following denial of his PCR petition, Petitioner sought review with the state supreme

22 court.  This petition raised only two of the twenty claims contained in the PCR petition.

23 (Dkt. 32, Ex. O.)  Subsequently, on the eve of the Arizona Supreme Court's consideration

24 of the petition for review, Petitioner filed a motion seeking leave to supplement the petition

25 to include the remaining claims rejected by the PCR court. (PR doc. 17.)  The motion stated

26 that supplementation of the petition was necessary to ensure that all of Petitioner's claims

27 were preserved for federal habeas review.  (Id. at 3.)  Respondents opposed the motion,

28      - 11 -

1   arguing that Petitioner's motion was untimely and that he had waived review of the claims

2   not presented in the initial petition. (PR doc. 19.)  The Arizona Supreme Court granted the

3   motion and accepted the supplemental petition for review for filing. (PR docs. 20, 21.)  On

4   this same day, the court summarily denied review of the PCR court's ruling. (PR doc. 22.)

5        Allegations A, B, and E were fairly presented to the Arizona Supreme Court in

6   Petitioner's supplemental petition for review.  Accordingly, the Court finds that these

7   allegations are exhausted and appropriate for review on the merits.

8   ***Allegations C and D***

9        Petitioner concedes that he did not present allegations C and D in state court. (Dkt.

10  27 at 58, 64.)  He asserts, without explanation or argument, that the claims may nonetheless

11  be considered because "there is an absence of an available state corrective process." (Id. at

12  59, 64.)  In the alternative, Petitioner maintains that he is not precluded from now seeking

13  state post-conviction relief on these claims. (Id.)  The Court summarily rejects Petitioner's

14  first argument and disagrees with the second.

15       It is the role of the district court to determine if a petitioner presently has a remedy

16  available in state court.  See Ortiz, 149 F.3d at 931 (citing Harris, 489 U.S. at 269-70

17  (O'Connor, J., concurring)).  In making that decision, the court must "assess the likelihood

18  that a state court will accord the habeas petitioner a hearing on the merits of his claim."

19  Phillips v. Woodford, 267 F.3d 966, 974 (9th Cir. 2001) (citing Harris, 489 U.S. at 268

20  (O'Connor, J., concurring)).  The question is whether "there is some reasonable probability

21  that (state) relief . . . will actually be available." Matias v. Oshiro, 683 F.2d 318, 320 (9th

22  Cir. 1982) (citing Powell v. Wyrick, 657 F.2d 222, 224 (8th Cir. 1981)).

23       Rules 32.2(b) and 32.4(a) of the Arizona Rules of Criminal Procedure provide that a

24  petitioner may file a successive, untimely PCR petition based only on claims that fall within

25

26

27

28

the exceptions to preclusion set forth in Rule 32.1(d)-(h).[5]  Such a petition must set forth "meritorious reasons" for not raising the claim in an available earlier proceeding.  In his first PCR petition, Petitioner presented numerous IAC claims, but did not allege ineffectiveness with respect to the allegedly deficient indictment.  The Court concludes that Claims 5-C and 5-D do not fall within any of Arizona's exceptions to preclusion and that Petitioner would be unable to show meritorious reasons under Rule 32.2(b) for not presenting these claims in his first PCR petition.  See Stewart v. Smith, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (noting that an IAC claim raised in a successive petition will be precluded automatically if an IAC claim was presented in an earlier PCR petition).  The Court finds there is no "reasonable probability that (state) relief . . . will actually be available" on allegations C and D.  Matias, 683 F.2d at 320.  Therefore, these claims are technically exhausted but procedurally defaulted.

Petitioner states generally in his traverse that he will, "in an abundance of caution," address cause and prejudice as to each claim alleged by Respondents to be procedurally defaulted.  (Dkt. 39 at 22.)  However, he has not asserted any such arguments with respect to allegations C and D; nor has he asserted that a fundamental miscarriage of justice will occur if these claims are not addressed on the merits.  Accordingly, the Court finds that Claims 5-C and 5-D are procedurally barred.

**Claim 6**

Petitioner alleges that counsel failed to investigate and present evidence of prenatal exposure to drugs and alcohol, and to seek expert assistance to establish the effects of such

---

[5]        Arizona's preclusion rule is independent of federal law, see Stewart v. Smith, 536 U.S. 856, 860 (2002) (per curiam), and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its preclusion rules such that they are an adequate bar to federal review of a claim.  See Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate); Poland v. Stewart, 117 F.3d 1094, 1106 (9th Cir. 1997) (same); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (same).

exposure. (Dkt. 27 at 67-74.) Respondents argue that this claim is procedurally defaulted because the claim presented to the state courts was predicated on counsel's failure to investigate and present evidence of alleged physical and psychological abuse Petitioner experienced during childhood (and to connect this background to the crime), rather than the effects of prenatal exposure to drugs and alcohol. (Dkt. 30 at 79-80.) The Court agrees.

In his PCR petition, Petitioner argued that sentencing counsel's failure "to immediately pursue mitigation caused the loss of mitigating information." (Dkt. 31, Ex. J at 15.) Specifically, Petitioner alleged that at the time of the crime he was likely brain damaged but that such damage had dissipated due to forced sobriety in prison; had counsel timely obtained a neuropsychological examination, evidence of brain damage could have been developed. (Id.) Petitioner further argued that counsel was ineffective for failing to show how Petitioner's abusive childhood related to his conduct at the time of the crime. (Id. at 23.) "Counsel should have realized that a connection between the two would be much more powerful in mitigation than the abuse standing alone." (Id. at 24.)

In support of these allegations, Petitioner appended a neuropsychological report from Robert Briggs, Ph.D. (PCR-ROA Vol. VIII, Ex. D to Rule 32 Pet.) However, Dr. Briggs found Petitioner to be in the normal range of neuropsychological functioning and identified no cognitive impairment. (Id. at 6.) With respect to intellectual abilities, he estimated a full scale IQ of 110, which is in the "High Average" range. (Id. at 5.) Diagnostically, Dr. Briggs concluded that Petitioner's ability to differentiate right from wrong at the time of the crime was likely impaired by drug and alcohol abuse as well as the physical and sexual abuse he witnessed and suffered as a child; he did not opine that Petitioner likely suffered from brain damage at the time of the offense. (Id. at 14.)

In his supplemental petition for review to the Arizona Supreme Court, Petitioner again argued that counsel had failed to obtain a mental health expert to substantiate allegations of brain damage at the time of the crime and to connect his traumatic and abusive childhood to his criminal actions. (PR doc. 21 at 2.)

1    This Court concludes that the claim asserted in the instant amended petition is

2    fundamentally different than that presented in state court.  Petitioner's argument in support

3    of Claim 6 is based entirely on trial counsel's alleged failure to investigate and develop

4    mitigation evidence based on Petitioner's *in utero* exposure to drugs and alcohol.  (Dkt. 27

5    at 72-74.)  This version of Petitioner's sentencing IAC claim has never been presented to the

6    Arizona courts.  While it is true that new factual allegations do not ordinarily render a claim

7    unexhausted, a petitioner may not "fundamentally alter the legal claim already considered

8    by the state courts."  Beaty v. Stewart, 303 F.3d 975, 989-90 (2002) (citing Vasquez, 474

9    U.S. at 260).  To do so deprives the state court of "a meaningful opportunity to consider

10   allegations of legal error without interference from the federal judiciary."  Vasquez, 474 U.S.

11   at 257.  Here, Petitioner is not simply proffering additional evidentiary support for a factual

12   theory presented to the state court.  Rather, he is alleging an entirely new theory of counsel

13   ineffectiveness; one that has not previously been presented in state court.[6]

14   The Court concludes that Claim 6 has not been fairly presented in state court.  The

15   Court further concludes that Claim 6 does not fall within any of Arizona's exceptions to

16   preclusion and that Petitioner would be unable to show meritorious reasons under Rule

17   32.2(b) for not presenting this claim in his first PCR petition.  See Smith, 202 Ariz. at 449,

18   46 P.3d at 1070.  Therefore, Petitioner has no available state remedies, and this claim is

19   technically exhausted but procedurally defaulted.  Petitioner has not asserted cause and

20   prejudice, or miscarriage of justice, to excuse the default.  Accordingly, Claim 6 is

21   procedurally barred.

22

23          [6]    This case is distinguishable from Landrigan v. Schriro, 441 F.3d 638, 642-43

24   (2006) (en banc), in which the petitioner expressly alleged in state court that counsel had
     failed to investigate and develop potential mitigating evidence, including his biological

25   mother's use of drugs and alcohol during gestation.  The court in Landrigan concluded that

26   new evidence of organic brain dysfunction and fetal alcohol syndrome did not fundamentally
     alter the claim considered in state court but only provided additional evidentiary support.  Id.

27   at 648.

28

1

**Claim 7**

2      Petitioner alleges that appellate counsel rendered ineffective assistance by failing to

3  raise the following claims of error on appeal:  (A) inadequate jury voir dire, (B) defective

4  "mere presence" jury instruction, and (C) improper consideration of victim impact evidence.

5  (Dkt. 27 at 74-77.)  Respondents assert that the claim is procedurally defaulted because

6  Petitioner failed to include it in his petition for review to the Arizona Supreme Court.  (Dkt.

7  30 at 86-87.)  As discussed with respect to Claim 5, the Arizona Supreme Court permitted

8  Petitioner to file a supplement to his petition for review, which included the allegations of

9  appellate ineffectiveness raised here.  (PR doc. 21 at 2-5.)  Therefore, the Court finds that

10  Claim 7 was fairly presented to the state supreme court and is appropriate for review on the

11  merits.

12      **Claim 21**

13      Petitioner alleges that execution after an extended period of incarceration on death

14  row fails to serve any legitimate penological purpose and violates his Eighth Amendment

15  right to be free from cruel and unusual punishment.  (Dkt. 27 at 111-20.) Petitioner concedes

16  he did not present this claim to the state courts but argues it could not be raised in state court

17  because of an absence of available state corrective process.  (Id. at 111.)  Regardless of

18  exhaustion, the Court will deny Claim 21 as plainly meritless.  See 28 U.S.C. § 2254(b)(2);

19  Rhines, 544 U.S. at 277.

20      The Supreme Court has not decided whether lengthy incarceration prior to execution

21  can constitute cruel and unusual punishment.  See Lackey v. Texas, 514 U.S. 1045 (1995)

22  (mem.) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not

23  been addressed).  In contrast, circuit courts, including the Ninth Circuit, hold prolonged

24  incarceration under a sentence of death does not offend the Eighth Amendment.  See

25  McKenzie v. Day, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); White v. Johnson, 79

26  F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); Stafford v. Ward, 59 F.3d 1025, 1028 (10th

27  Cir. 1995) (delay of 15 years).  Accordingly, Petitioner cannot establish a right to federal

28

1    habeas relief.  See Allen v. Ornoski, 435 F.3d 946, 958-60 (9th Cir. 2006).

2        **Claim 22**

3        Petitioner challenges lethal injection as an unconstitutional method of execution. (Id.

4    at 121-33.) He argues that the combination of sodium thiopental, pancuronium bromide, and

5    potassium chloride causes an inmate to consciously suffer an excruciatingly painful and

6    protracted death. (Id. at 122.) Respondents assert that the claim is procedurally defaulted

7    because it was not properly presented in the petition for review to the Arizona Supreme

8    Court. (Dkt. 30 at 144.) The Court agrees that the claim is defaulted but on different

9    grounds.

10        In his PCR petition, Petitioner included a section titled, "Issues Preserved for Appeal."

11    (Dkt. 31, Ex. J at 36.) It reads: "Mr. Poyson, realizing that the Arizona Supreme Court has

12    ruled against his claims on the following issues, nonetheless wishes to alert this court that he

13    makes the following arguments." (Id.) Petitioner then lists fourteen separate claims,

14    including the following: "Execution by lethal injection is cruel and unusual punishment.

15    (Rejected in State v. Spears, 184 Ariz. 277, 291, 908 P.2d 1062, 1076 (1996))." This one-

16    sentence statement was insufficient to fairly alert the state court to the extensive factual basis

17    underlying the claim as presented in these proceedings. "A thorough description of the

18    operative facts before the highest state court is a necessary prerequisite to satisfaction of the

19    standard of O'Sullivan and Harless that 'a federal habeas petition [must] provide the state

20    courts with a "fair opportunity" to apply controlling legal precedent to the facts bearing upon

21    his constitutional claim.'" Kelly v. Small, 315 F.3d 1063, 1069 (9th Cir. 2003) (citing

22    Anderson v. Harless, 459 U.S. at 6.)

23        In the event the Court finds Claim 22 unexhausted, Petitioner asserts alternatively that

24    he was not required to present the claim in state court because it was futile to do so in light

25    of the Arizona Supreme Court's consistent rejection of similar claims and that state court

26    relief is still available under the "newly-discovered evidence" exception to preclusion under

27    Arizona's Rule 32.1(e). (Dkt. 39 at 70-72.) The Court summarily rejects the first argument;

28

1   "the apparent futility of presenting claims to state courts does not constitute cause for

2   procedural default." Roberts v. Arave, 847 F.2d 528, 530 (9th Cir. 1988). The Court also

3   concludes that Petitioner has no available state remedies for this claim.

4        Under Arizona's Rule 32.1(e), before a claim of newly-discovered evidence will be

5   considered in a successive PCR petition, it must be shown that the evidence supplies newly-

6   discovered material facts that existed but were not uncovered at the time of trial *and* that the

7   petitioner exercised due diligence to secure it. Ariz. R. Crim. P. 32.1(e); 32.2(b). Petitioner

8   asserts that his newly-discovered facts concern the interplay between the three drugs used

9   in lethal injection executions and that these facts were not "available" at the time of his direct

10  appeal in 1999. (Dkt. 39 at 70.)  However, Petitioner does not explain why he did not

11  investigate these facts either before sentencing or during his PCR proceedings.  In his

12  petition, Petitioner references scientific opinions and articles dating as far back as 1982 and

13  notes an "unmistakable trend over the past two decades condemning the use of

14  neuromuscular blocking agents" in euthanasia. (Dkt. 27 at 132.)  The Court concludes that

15  Petitioner cannot show diligence for not investigating the facts underlying this claim and

16  presenting it in state court either before sentencing, on appeal, or in his first PCR proceeding.

17  See Williams v. Stewart, 441 F.3d 1030, 1060-61 (9th Cir. 2006) (per curiam) (finding no

18  due diligence where Arizona prisoner failed to seek evidence after introduction of lethal

19  injection as mode of execution in 1992 but before filing of PCR petition in 1994).  Because

20  the Court finds there are no remedies presently available to Petitioner in state court, Claim

21  22 is technically exhausted but procedurally defaulted. Coleman, 501 U.S. at 732, 735 n.1.

22       As cause for the default, Petitioner asserts that his appellate counsel's representation

23  was constitutionally deficient. (Dkt. 39 at 72.)  Before an allegation of ineffectiveness may

24  be used to establish cause for a procedural default, it must have been presented to the state

25  court as an independent claim.  Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000)

26  ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of

27  another claim can itself be procedurally defaulted"); Murray, 477 U.S. at 489-90 ("[T]he

28

exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (exhaustion requires petitioner to first raise ineffective appellate counsel claim separately in state court before alleging it as cause for default).  Petitioner exhausted numerous appellate IAC claims, but not one based on the failure to challenge lethal injection as an execution method.  Because Petitioner did not present in state court an independent appellate ineffectiveness claim based on the failure to present Claim 22 on direct appeal, such alleged ineffectiveness cannot constitute cause.  Petitioner does not assert that a fundamental miscarriage of justice will occur if this claim is not heard on the merits.  Accordingly, Claim 22 is procedurally barred.

### Summary of Procedural Status Findings

The Court finds that Claims 5-C, 5-D, 6, and 22 are procedurally barred and that Claims 1 and 21 are plainly meritless.  Accordingly, Petitioner's motions for evidentiary development as to these claims are denied.  Claims 5-A, 5-B, 5-E, and 7 are properly before this Court for review and will be considered with respect to the remaining requests for evidentiary hearing and expansion of the record.

### LEGAL STANDARD FOR EVIDENTIARY HEARING AND EXPANSION OF THE RECORD

#### Evidentiary Hearing

The decision whether to grant an evidentiary hearing when there are material facts in dispute is generally at the discretion of the district court judge.  See Townsend v. Sain, 372 U.S. 293, 312, 318 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992), and limited by § 2254(e)(2); Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999); Rule 8, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the district court judge shall determine if an evidentiary hearing is required).  However, a judge's discretion is significantly circumscribed by § 2254(e)(2) of the AEDPA.  See Williams v. Taylor, 529

U.S. 420 (2000).

Section 2254 provides that:

*If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –*

(A) the claim relies on –

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

As interpreted by the Supreme Court, subsection (e)(2) precludes an evidentiary hearing in federal court only if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams, 529 U.S. at 432. "The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." Id. at 435. The Court found that this rule served the AEDPA's goal of furthering comity in that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Id.; see also Cardwell v. Netherland, 971 F. Supp. 997, 1008 (E.D. Va. 1997) ("Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings"), aff'd Cardwell v. Greene, 152 F.3d 331 (4th Cir. 1998), overruled on other grounds, Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). In correlation, subsection (e)(2) allows factual development when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance was denied the opportunity to do so." Williams, 529 U.S. at 432; see Baja, 187 F.3d at 1078-79.

1    In compliance with § 2254(e)(2), when the factual basis for a particular claim has not

2    been fully developed in state court, the first question for a district court in evaluating whether

3    to grant an evidentiary hearing on the claim is whether the petitioner was diligent in

4    attempting to develop its factual basis. See Baja, 187 F.3d at 1078 (quoting Cardwell, 152

5    F.3d at 337. The Supreme Court set an objective standard for determining "diligence" –

6    whether a petitioner "made a reasonable attempt, in light of the information available at the

7    time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435.  For

8    example, when there is information in the record that would alert a reasonable attorney to the

9    existence and importance of certain evidence, the attorney "fails" to develop the factual

10   record if he does not make reasonable efforts to sufficiently investigate and present the

11   evidence to the state court. See id. at 438-40 (counsel lacked diligence because he was on

12   notice of possibly material evidence and conducted only a cursory investigation); Alley v.

13   Bell, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and

14   raised claims of judicial bias and jury irregularities in state court, but failed to investigate all

15   the factual grounds for such claims).

16       Absent unusual circumstances, diligence requires "that the prisoner, at a minimum,

17   seek an evidentiary hearing in state court in the manner prescribed by state law." Williams,

18   529 U.S. at 437; see Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), amended on

19   denial of reh'g, 253 F.3d 1150 (9th Cir. 2001) ("inactions show insufficient diligence" on

20   ineffective counsel claim because petitioner did not request an evidentiary hearing, and

21   brought claim only on appeal not in a collateral proceeding). Moreover, the mere request for

22   an evidentiary hearing may not be sufficient to establish diligence if a reasonable person

23   would have taken additional steps. See Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir.

24   2000) (petitioner requested hearing but found not diligent because he failed to present

25   affidavits of family members that were easily obtained without court order and with minimal

26   expense); see also Koste v. Dormire, 345 F.3d 974, 985-86 (8th Cir. 2003) (lack of diligence

27   despite hearing request because petitioner made no effort to develop the record or assert any

28

- 21 -

facts to support claim that his counsel was ineffective for knowing of and failing to investigate petitioner's psychiatric condition), <u>cert. denied</u>, 124 S. Ct. 2070 (2004).  If an evidentiary hearing is requested, a petitioner's inability to persuade a state court to conduct such a hearing does not in itself demonstrate lack of diligence.  <u>See</u> <u>Cardwell</u>, 152 F.3d at 338.

In sum, if this Court determines that a petitioner has not been diligent in establishing the factual basis for his claims in state court, then the Court may not conduct a hearing unless the petitioner satisfies one of § 2254(e)(2)'s narrow exceptions.

**Expansion of the Record**

Rule 7 of the Rules Governing Section 2254 Cases authorizes a federal habeas court to expand the record to include additional material relevant to the determination of the merits of a petitioner's claims.  Rule 7 provides:

> The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath, to written interrogatories propounded by the judge.  Affidavits may also be submitted and considered as part of the record.

Rule 7(b), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  The purpose of Rule 7 "is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing."  Advisory Committee Notes, Rule 7, 28 U.S.C. foll. § 2254; <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 81-82 (1977).

Section 2254(e)(2), as amended by the AEDPA, limits a petitioner's ability to present new evidence through a Rule 7 motion to expand the record in the same manner as it does with regard to evidentiary hearings.  <u>See</u> <u>Cooper-Smith v. Palmateer</u>, 397 F.3d 1236, 1241 (9th Cir. 2005) (holding that the conditions of § 2254(e)(2) generally apply to petitioners seeking relief based on new evidence, even when they do not seek an evidentiary hearing) (citing <u>Holland v. Jackson</u>, 542 U.S. 649, 652-53 (2004) (per curiam)).  Thus, when a petitioner seeks to introduce, through a Rule 7 motion, new affidavits and other documents

never presented in state court for the purpose of establishing the factual predicate of a claim, he must show both diligence in developing the factual basis in state court and relevancy of the evidence to his claim. If diligence is not shown, the requirements of § 2254(e)(2) must be satisfied before the Court can consider expansion of the record. To find otherwise would allow circumvention of the AEDPA's restriction against federal habeas courts holding evidentiary hearings in cases where the petitioner is at fault for failing to develop the facts in state court.

When a petitioner seeks to expand the record for reasons other than to introduce evidence to bolster the merits of his claim, the strictures of § 2254(e)(2) may not apply. See Boyko v. Parke, 259 F.3d 781, 790 (7th Cir. 2001) (finding it nonsensical to apply § 2254(e)(2) when expansion of the record is used for reasons other than to introduce new factual information on the merits of a claim). For example, expansion of the record may be appropriate to cure omissions in the state court record, see Dobbs v. Zant, 506 U.S. 357, 359 (1993) (per curiam) (reversing for failure to supplement the record with a late-discovered transcript); see also Rule 5, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (directing answering party to submit portions of record it deems relevant), or to establish diligence pursuant to § 2254(e)(2). See Boyko, 259 F.3d at 792.

In evaluating the instant motion, the Court must first determine whether Petitioner is seeking expansion of the record to achieve the same end as an evidentiary hearing. If so, the Court must then assess whether Petitioner demonstrated diligence in developing the factual basis of the claim in state court and, if not, whether he meets the requirements of § 2254(e)(2). In addition, the Court must determine whether the proffered evidence is relevant to a determination of the claim's merits, see Rule 7(a), 28 U.S.C. foll. § 2254, and whether the new evidence fundamentally alters the claim such that it is rendered unexhausted. See Vasquez, 474 U.S. at 258-59. If Petitioner is seeking expansion for some other purpose, such as curing omissions from the state court record, establishing cause and prejudice or a fundamental miscarriage of justice for a procedural default, or demonstrating

1 diligence for purposes of showing the inapplicability of § 2254(e)(2), the Court need only

2 evaluate relevance.

3 **MOTIONS DISCUSSION**

4 **Claim 5-B**

5      In support of his claim that counsel failed to obtain mental health experts to develop

6 an appropriate defense at trial, Petitioner seeks an evidentiary hearing and to expand the

7 record with affidavits, photographs, records, and articles to establish that he suffers from the

8 adverse effects of prenatal alcohol exposure. (Dkt. 40 at 11-13; Dkt. 41 at 11-19.) He asserts

9 that neurological impairments resulting from FASD "arguably prevented him from engaging

10 in the reflection necessary to form the *mens rea* of first degree premeditated murder." (Dkt.

11 41 at 12.) Respondents argue *inter alia* that evidentiary development is unwarranted because

12 Petitioner did not diligently attempt to develop these facts in state court. (Dkt. 46 at 12-13.)

13 Petitioner counters that the restrictions of § 2254(e)(2) do not apply because he requested an

14 evidentiary hearing but the state court denied the request. (Dkt. 40 at 12; Dkt. 41 at 10.)

15      During PCR proceedings, Petitioner sought and was authorized funds to retain a

16 neuropsychological expert, Dr. Robert Briggs. (PCR-ROA Vol. VIII, Mtn. for Funds for

17 Expert Witness; id., M.E. 2/1/02.) He appended Dr. Briggs's report to his PCR petition in

18 support of this claim. (Id., Ex. D to Rule 32 Pet.) However, although detailing Petitioner's

19 prenatal exposure to drugs and alcohol (including Petitioner's mother's daily use of LSD and

20 marijuana during at least the first two months of her pregnancy) and a childhood head injury,

21 Dr. Briggs's testing revealed no significant neuropsychological impairment or cognitive

22 dysfunction. (Id. at 1, 6.) In considering this claim, the PCR court assumed Dr. Briggs

23 would testify consistently with his report but found that nothing in the report indicated that

24 a pre-trial neuropsychological examination would have yielded results more favorable to the

25 defense than that obtained by the two experts who examined Petitioner prior to trial to

26 determine both his competency to stand trial and his mental condition at the time of the

27 crime. Consequently, the PCR court found that Petitioner had failed to establish a colorable

28

1    claim and was thus not entitled to an evidentiary hearing.  (Dkt. 32, Ex. N at 4-6.)

2         In these proceedings, Petitioner seeks an evidentiary hearing and to expand the record

3    to establish that he suffers from fetal-alcohol-related impairment.  To support this assertion,

4    he proffers the declaration of a medical expert who opines, based solely on a review of

5    records and two childhood photographs of Petitioner, that Petitioner has "abnormal physical,

6    intellectual and behavioral features consistent with the effects of prenatal exposure to

7    alcohol." (Dkt. 41, Ex. 1.)  The Court concludes that this factual basis for Petitioner's claim

8    was not adequately proffered to the state court; Petitioner had an opportunity during PCR

9    proceedings to develop evidence of fetal-alcohol-related impairment through his

10   neuropsychological expert and failed to do so.

11        Petitioner's lack of diligence in state court prohibits this Court from holding a hearing

12   or expanding the record with respect to Claim 5-B.  <u>See</u> <u>Cooper-Smith</u>, 397 F.3d at 1241.

13   Petitioner has not attempted to satisfy the requirements of §§ 2254(e)(2)(A) & (B); therefore,

14   his motions for an evidentiary hearing and to expand the record are denied.

15   **Claims 5-A and 5-E**

16        In support of his claims that counsel failed to timely examine physical evidence before

17   trial and failed to move for a mistrial in response to a venire member's comments, Petitioner

18   requests an evidentiary hearing to present testimony from trial counsel and an expert

19   regarding the minimum qualifications and standards of performance for trial counsel in

20   capital cases.  (Dkt. 40 at 11-13.)  Despite having a substantial period of time to prepare the

21   instant motion and access to investigative resources, Petitioner proffers no declarations from

22   either trial counsel or his investigator setting forth the evidence these witnesses would

23   present.  Nor does Petitioner specify the facts to be developed at a hearing; he states only that

24   each of his trial attorneys "will testify regarding his investigation of Petitioner's case, as well

25   as his strategy regarding presentation of evidence at the guilt phase of Petitioner's trial." (<u>Id.</u>

26   at 12-13.)  The Court finds this insufficient.

27        In its Order of Appointment and General Procedures, the Court directed that any

28

motion for evidentiary development describe with specificity the facts to be developed. (Dkt. 4 at 4.)  In addition, if requesting an evidentiary hearing, the Court directed that Petitioner explain how the alleged facts, if proven, would entitle him to relief and whether the state court reliably found the facts.  Petitioner's request for a hearing on these claims fails to comply with the Court's directive; therefore, pursuant to that Order, the motion is summarily denied.  (Id.)

**Claim 7**

In support of his appellate IAC claim, Petitioner seeks an evidentiary hearing to present testimony from John Rood, Petitioner's appellate counsel, concerning his selection and rejection of various appellate claims and a legal expert regarding the minimum qualifications and standards of performance for appellate counsel in capital cases.  (Dkt. 40 at 14-15.)  The Court again finds this request to be insufficient in light of its directive that Petitioner allege the specific facts to be developed.  In addition, the Court finds that Petitioner had an opportunity to develop this claim in state court but failed to do so.

Petitioner presented each of the three allegations comprising Claim 7 in his PCR petition.  (Dkt. 31, Ex. J at 18-23, 31-32, 33-34.)  In support of the claims, Petitioner appended only a copy of his Opening Brief from the direct appeal.  (PCR-ROA Vol. VIII, Ex. B to Rule 32 Pet.)  The PCR petition did not include a declaration from appellate counsel explaining why he did not include the claims identified in Claim 7 in the direct appeal or a declaration from either PCR counsel or his investigator detailing an interview with appellate counsel or stating that he refused to be interviewed.  Petitioner's multiple requests for additional investigative funds were all granted by the PCR court, and Petitioner did append a summary from his investigator concerning an interview with trial counsel. (PCR-ROA Vol. VII, M.E. 11/16/01; PCR-ROA Vol. VIII, M.E. 2/26/02; PCR-ROA Vol. IX, M.E. 7/25/02; PCR-ROA Vol. VIII, Ex. A to Rule 32 Pet.)

Under Arizona law, Petitioner had a duty to file supporting affidavits, records, or other evidence available to him to support the allegations raised in his PCR petition.  Ariz. R.

Crim. P. 32.5.  In its ruling, the PCR court expressly noted that Petitioner was required to set forth a colorable claim for relief to justify an evidentiary hearing.  (Dkt. 32, Ex. N at 3.)  It noted: "A trial judge who has authorized Rule 32 counsel to spend money to investigate possible claims for relief probably has a reasonable expectation that a colorable claim for relief for ineffective assistance of counsel will at least initially be supported by statements of fact, affidavits or similar documentation."  (Id.)

There is nothing in the record to indicate that appellate counsel refused to be interviewed or cooperate with PCR counsel's investigation of Petitioner's IAC claims, and the Court finds that Petitioner could have "easily obtained [his] affidavit[]." Dowthitt, 230 F.3d at 758.  In addition, appellate counsel is "not ineffective for selecting some issues and rejecting others." State v. Herrera, 183 Ariz. 642, 647, 905 P.2d 1377, 1382 (Ariz. App. 1995).  Thus, to succeed on an appellate IAC claim, it was incumbent upon PCR counsel to assert something more than the fact that counsel failed to raise an issue on appeal; he had to show that appellate counsel's failure to assert the issue was constitutionally deficient.  Id. (holding appellate IAC claim not colorable in the absence of evidence that failure to raise additional claims fell below professional norms).  At a minimum, PCR counsel should have investigated why appellate counsel did not raise the allegations presented in Claim 7 on appeal and set forth these allegations in his PCR petition.

The Court concludes that Petitioner did not diligently attempt to develop the factual basis of Claim 7.  Petitioner's lack of diligence in state court prohibits this Court from holding a hearing, and Petitioner has not attempted to satisfy the requirements of §§ 2254(e)(2)(A) & (B).  Therefore, the motion for an evidentiary hearing on Claim 7 is denied.

Based on the foregoing,

**IT IS ORDERED** that Claims 5-C, 5-D, 6, and 22 are dismissed with prejudice as procedurally barred and that Claims 1 and 21 are dismissed with prejudice as meritless.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery and

1   Evidentiary Hearing (Dkt. 40) is **DENIED**.

2          **IT IS FURTHER ORDERED** that Petitioner's First Motion to Expand the Record

3   (Dkt. 41) is **DENIED**.

4          **IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this

5   Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix, AZ 85007-

6   3329.

7          DATED this 24th day of July 2006.

8

9   _____

10                 Neil V. Wake
                United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                        - 28 -