**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Allen Poyson, | No. CV 04-00534-PHX-NVW |
| Petitioner, | DEATH PENALTY CASE |
| vs. | |
| Dora Schriro, et al., | **ORDER RE: MOTION FOR RECONSIDERATION** |
| Respondents. | |

Before the Court is Petitioner's motion for reconsideration of the Court's July 25, 2006 order denying his motions for discovery, expansion of the record, and an evidentiary hearing. (Dkt. 56.) Pursuant to the Court's order, Respondents filed an opposition, and Petitioner filed a reply. (Dkts. 60, 61.) The Court held oral argument on the motion on November 7, 2006.

Petitioner seeks reconsideration of the Court's dismissal of Claim 6 as procedurally barred and denial of evidentiary development of Claim 5-B. Generally, motions to reconsider are appropriate only if the Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Petitioner's request for reconsideration is based solely on clear error.

**Claim 6**

In this claim Petitioner alleges ineffective assistance of counsel (IAC) at sentencing.

In its July 25 order, the Court determined that Claim 6 was not exhausted in state court and, consequently, is procedurally barred because Petitioner has no available state remedies to exhaust it now. (Dkt. 54 at 14-15.) In finding the claim unexhausted, the Court determined that Claim 6 is fundamentally different than the IAC-sentencing claim actually presented to the state court in Petitioner's petition for post-conviction relief (PCR). Specifically, the Court observed that the state PCR claim was predicated on counsel's failure to investigate and present evidence of alleged physical and psychological abuse Petitioner experienced during childhood and to connect this background to the crime, whereas Claim 6 is based solely on counsel's failure to investigate and present evidence of prenatal exposure to drugs and alcohol and to seek expert assistance to establish the effects of such exposure.

Petitioner argues in the instant motion that the Court erroneously construed his state and federal court claims too narrowly. He asserts that Claim 6 is a broad claim of ineffectiveness based on counsel's failure to investigate all potential sources of mitigating evidence and that it was exhausted in his PCR petition by an assertion that counsel had failed to comply with provisions in the ABA Guidelines for Appointment and Performance of Counsel in Death Penalty Cases requiring investigation of mitigation evidence. (Dkt. 56 at 3-4.) In Petitioner's view, the "factual premise" of his state claim was simply that trial counsel failed to investigate mitigating evidence. Therefore, because Claim 6 is also based on a general failure to investigate mitigation evidence (albeit different "evidence"), the factual basis was properly exhausted vis-a-vis the state PCR petition. With regard to the focus on prenatal alcohol exposure in Claim 6, Petitioner contends reference to this specific evidence is addressed "solely to the prejudice prong" of his IAC claim.

It is well settled that before a petitioner seeks a writ of habeas corpus in federal court, he must have exhausted his state court remedies with respect to each claim asserted in his habeas petition. *Picard v. Connor,* 404 U.S. 270, 275 (1971); 28 U.S.C. § 2254(b)(1)(A). This means that a federal habeas petitioner must have provided "the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional

claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard*, 404 U.S. at 276-77). When a petitioner raises the same legal claim in state and federal proceedings, reliance on different factual grounds in the habeas petition that fundamentally alters the claim as presented in the state court renders that claim unexhausted. *Vasquez v. Hillery,* 474 U.S. 254, 260 (1986).[1]

With respect to IAC, specifics acts or omissions of counsel constitute separate claims, each of which must be exhausted in state court. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) (stating that a petitioner making an IAC claim must identify the particular acts or omissions of counsel that are alleged to have been the result of unreasonable professional judgment). The Ninth Circuit has confirmed that a generic IAC claim is insufficient to exhaust particular factual allegations. *See Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 2984 (2006) (rejecting argument that presentation of any IAC claim is sufficient to exhaust unrelated IAC allegations); *Carriger v. Lewis*, 971 F.2d 329, 333-34 (9th Cir. 1992) (en banc) (same); *see also Rodriguez v. Hoke,* 928 F.2d 534, 538

---

[1]In *Vasquez*, the petitioner claimed that the state systematically excluded blacks from the grand jury which eventually indicted him. 474 U.S. at 256. The petitioner made this claim on both direct review and state habeas review. *Id.* On federal habeas review, the district court ordered statistical evidence as to the grand jury service of blacks in the relevant county, and it also ordered the parties to present evidence of statistical significance, *i.e.,* the probability that blacks were excluded from the jury not by deliberate design but by "chance or accident alone." *Id.* at 257. The Supreme Court held that the district court could view this additional evidence without running afoul of the state exhaustion requirement despite the fact that such evidence was not presented to the state courts. *Id.* at 258. The Court found that

> the circumstances present no occasion for the Court to consider a case in which the prisoner has attempted to expedite federal review by deliberately withholding essential facts from the state courts. We hold merely that the supplemental evidence presented by respondent did not fundamentally alter the legal claim already considered by the state courts, and, therefore, did not require that respondent be remitted to state court for consideration of that evidence.

*Id.* at 260.

(2d Cir.1991) (dismissing petition as unexhausted where petitioner's IAC claim alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)); *Tippitt v. Lockhart,* 903 F.2d 552, 554 (8th Cir.1990) (finding claims were not fairly presented in state court where legal theory of ineffectiveness broadly the same but factual allegations were not). However, a petitioner may develop additional facts supporting a particular claim. *See Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006) (en banc), *cert. granted*, 2006 WL 1591780 (U.S. Sept. 26, 2006) (No. 05-1575) (concluding that new evidence of organic brain dysfunction and fetal alcohol syndrome did not fundamentally alter claim considered in state court that counsel had failed to investigate and develop potential mitigating evidence, including his biological mother's use of drugs and alcohol during gestation).

Petitioner relies on *Wiggins v. Smith*, 539 U.S. 510, 524 (2003), and the Ninth Circuit's decisions in *Landrigan v. Schriro* and *Weaver v. Thompson,* 197 F.3d 359 (9th Cir. 1999), for the proposition that a general "failure to investigate" allegation is sufficient to exhaust an IAC sentencing claim. However, *Wiggins* is not a case about exhaustion, and the petitioner in that case actually exhausted specific factual allegations in support of his "failure to investigate" IAC claim:

> In 1993, Wiggins sought postconviction relief in Baltimore County Circuit Court. With new counsel, he challenged the adequacy of his representation at sentencing, arguing that his attorneys had rendered constitutionally defective assistance by failing to investigate and present mitigating evidence of his dysfunctional background. To support his claim, petitioner presented testimony by Hans Selvog, a licensed social worker certified as an expert by the court. Selvog testified concerning an elaborate social history report he had prepared containing evidence of the severe physical and sexual abuse petitioner suffered at the hands of his mother and while in the care of a series of foster parents. Relying on state social services, medical, and school records, as well as interviews with petitioner and numerous family members, Selvog chronicled petitioner's bleak life history.

539 U.S. at 516. In considering whether counsel's performance was deficient, the Court considered the specific facts that would have been uncovered had counsel conducted a

- 4 -

1  reasonable investigation. *Id.* at 525. The Court did not, as implied by Petitioner, reference
2  these facts only with respect to the prejudice analysis.

3  In *Landrigan*, the petitioner had argued in state court substantially the same claim
4  proffered in habeas: that counsel failed to investigate and develop potential mitigating
5  evidence, including his biological mother's use of drugs and alcohol during gestation. 441
6  F.3d at 642-43. The Ninth Circuit ruled that newly-developed evidence of organic brain
7  dysfunction and possible deficiencies from fetal alcohol syndrome did not fundamentally
8  alter the claim considered in state court and noted that Landrigan had sought but was denied
9  in state court the appointment of a medical expert to assist in establishing mitigating evidence
10 regarding the effects of drug and alcohol use on a developing fetus.

11 In *Weaver*, the court held that a jury misconduct claim was properly exhausted when
12 the petitioner presented incidents of improper jury contact that differed in number, but not
13 in kind, from what was presented to the state courts. It observed that the petitioner had
14 consistently pressed one claim through his state post-conviction proceedings: "Petitioner's
15 constitutional rights to due process and equal protection of the law were violated as a result
16 of misconduct by the bailiff and/or the jurors." 197 F.3d at 364. Because the state court did
17 not allow Weaver an opportunity to develop his claim, the precise factual predicate changed
18 after the federal district court conducted a hearing. However, the Ninth Circuit found that
19 the "factual basis for the claim remained rooted in the same incident: the bailiff's contact
20 with the jury after it sent out its note"; therefore, Weaver's claim was not fundamentally
21 altered by the newly-adduced evidence. *Id.*

22 In both *Landrigan* and *Weaver*, the Circuit focused on the fact that the petitioner had
23 not been given an opportunity to develop the facts of their claims in state court. The same
24 cannot be said here. During PCR proceedings, Petitioner sought and was authorized funds
25 to retain a neuropsychological expert, Dr. Robert Briggs, who is the type of expert that could
26 appropriately assess fetal-alcohol-related impairment. (PCR-ROA Vol. VIII, Mtn. for Funds

1 for Expert Witness; *id.*, M.E. 2/1/02.)[2] Petitioner appended Dr. Briggs's report to his PCR
2 petition in support of his IAC claim. (*Id.*, Ex. D to Rule 32 Pet.)  However, although detailing
3 Petitioner's prenatal exposure to drugs and alcohol (including Petitioner's mother's daily use
4 of LSD and marijuana during at least the first two months of her pregnancy) and a childhood
5 head injury, Dr. Briggs's testing revealed no significant neuropsychological impairment or
6 cognitive dysfunction.  (*Id.* at 1, 6.)  Presumably, this is why PCR counsel did not include
7 in the PCR petition an IAC claim based on the failure of trial counsel to present evidence of
8 fetal alcohol syndrome disorder (FASD) at sentencing.

9       In sum, Petitioner did not present to the state court the factual basis of Claim 6 – that
10 trial counsel failed to investigate or present evidence of FASD.  Unlike *Vasquez*, Petitioner
11 does not seek to present in this Court only supplemental evidence for the claim presented in
12 state court.  Rather, Petitioner has proffered new factual allegations that would work a
13 fundamental alteration to the claim considered by the Arizona courts such that this Court
14 cannot say that the state courts had the first opportunity to review it.  *See Coleman v.*
15 *Thompson,* 501 U.S. 722, 731 (1991) ("[I]n a federal system, the States should have the first
16 opportunity to address and correct alleged violations of state prisoner's federal rights.").
17 Accordingly, the Court declines to reconsider its finding that Claim 6 is procedurally barred.

18       Even if the claim were not barred, this Court would be precluded by 28 U.S.C.
19 § 2254(e)(2) from considering the new FASD-related evidence proffered by Petitioner in
20 these proceedings.  *See Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005)
21 (holding that the conditions of § 2254(e)(2) generally apply to petitioners seeking relief

---

[2] "PCR-ROA" refers to the four-volume Post-Conviction Record on Appeal prepared by the Clerk of the Mohave County Superior Court for the petition for review to the Arizona Supreme Court from the denial of the PCR petition (Case No. CR-03-0084-PC; filed Aug. 26, 2003) (labeled as "Volumes VII - X"); "M.E." refers to a one-volume set of Minute Entries prepared by the Clerk of the Mohave County Superior Court for the direct appeal to the Arizona Supreme Court (Case No. CR-98-0510-AP; filed Jan. 8, 1999). The original trial transcripts and certified copies of the state court records were provided to this Court by the Arizona Supreme Court.  (*See* Dkt. 36.)

- 6 -

1 based on new evidence, even when they do not seek an evidentiary hearing) (citing *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (per curiam)). As already noted, Petitioner had an opportunity to develop this evidence in state court and did not. The state court provided resources for an investigator and a neuropsychological expert, the latter of whom considered the fact of Petitioner's prenatal drug and alcohol exposure but found no significant neuropsychological impairment or cognitive dysfunction.

The Court rejects Petitioner's argument that the failure to develop his new FASD-related evidence is attributable to the state court's refusal to hold an evidentiary hearing. In denying the request for a hearing on Petitioner's claim that counsel had failed to connect Petitioner's abusive background to his behavior at the time of the crime, the PCR court noted that it had provided "the means by which [PCR counsel] could investigate the Defendant's background and find out circumstances that trial counsel could have reasonably discovered himself and raised at sentencing but failed to." (Dkt 32, Ex. N at 14.) The court assumed Dr. Briggs would testify consistent with his report, but found that the report failed to make the connection attributed by PCR counsel. (*Id.* at 13.) The court also noted that although Petitioner alleged trial counsel should have presented additional mitigation, the PCR petition failed to indicate "what that additional mitigation would have been, how it would have been proven, and what weight it would have been assigned in countering the overwhelming aggravating factors." (*Id.* at 14.)

It is evident that the state court denied Petitioner's request for an evidentiary hearing for the same reasons as this Court – Petitioner had an opportunity to develop the facts but did not. Therefore, consideration of Petitioner's new factual allegations is precluded by 28 U.S.C. § 2254(e)(2). *See Williams v. Taylor*, 529 U.S. 420, 432 (2000) (holding that subsection (e)(2) precludes an evidentiary hearing in federal court if the failure to develop a claim's factual basis is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.")

- 7 -

**Claim 5-B**

Petitioner asserts that the "factual basis" of this claim is that trial counsel failed to retain a mental health expert to assist in the guilt phase of his trial and that he was prejudiced thereby because neurological impairments resulting from FASD "arguably prevented him from engaging in the reflection necessary to form the *mens rea* of first degree premeditated murder." (Dkt. 41 at 12.) In denying his request for evidentiary development of Claim 5-B, the Court concluded that Petitioner had an opportunity during PCR proceedings to develop evidence of fetal-alcohol-related impairment through his neuropsychological expert and failed to do so. (Dkt. 54 at 25.)

Petitioner argues that the Court misapplied the *Williams v. Taylor* diligence standard. He further states that he proffered the report of Dr. Briggs, who opined that Petitioner has an impulsive personality and that, but for the PCR court's erroneous failure to hold an evidentiary hearing, his efforts to develop this claim were reasonable. In his view, all a petitioner must do to satisfy the *Williams* diligence standard is request an evidentiary hearing. The Court disagrees.

The diligence assessment is an objective one, requiring a determination of whether a petitioner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. For example, when there is information in the record that would alert a reasonable attorney to the existence and importance of certain evidence, the attorney fails to develop the factual record if he does not make reasonable efforts to sufficiently investigate and present the evidence to the state court. *See id*. at 438-39, 442; *Alley v. Bell*, 307 F.3d 380, 390-91 (6th Cir. 2002) (lack of diligence because petitioner knew of and raised the claims in state court, but failed to investigate all the factual grounds for such claims).

Absent unusual circumstances, diligence requires that a petitioner "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437; *see Bragg v. Galaza*, 242 F.3d 1082, 1090 (9th Cir.) (finding no diligence

1  because petitioner neither requested an evidentiary hearing in the trial court nor filed a state
2  habeas petition), *amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001).  The mere
3  request for an evidentiary hearing, however, may not be sufficient to establish diligence if
4  a reasonable person would have taken additional steps.  *See Dowthitt v. Johnson*, 230 F.3d
5  733, 758 (5th Cir. 2000) (failed to present affidavits of family members that were easily
6  obtained without court order and with minimal expense); *see also McNair v. Campbell*, 416
7  F.3d 1291, 1299-1300 (11th Cir. 2005) (no development of evidence available through
8  petitioner, family members, and medical literature, and no appeal of denial of funds and
9  hearing); *Cannon v. Mullin*, 383 F.3d 491, 500 (5th Cir. 2004) (lack of diligence if petitioner
10 does not proffer "evidence that would be readily available if the claim were true."); *Koste v.*
11 *Dormire*, 345 F.3d 974, 985-86 (8th Cir. 2003) (no effort to develop the record or assert any
12 facts to support claim).

13 In his PCR petition, Petitioner argued that trial counsel should have secured the
14 appointment of a mental health expert early in the case. (Dkt. 31, Ex. J at 14.)  The failure
15 to do so prevented counsel from presenting a "diminished capacity" defense consistent with
16 *State v. Christensen*, 129 Ariz. 32, 628 P.2d 580 (1981). (*Id.*)  In support, he noted that one
17 of the pre-trial examiners, Dr. Vasilios Kaperonis, M.D., had described Petitioner as
18 "impulsive"; he also appended Dr. Briggs's report. (*Id.* at 15.)  In finding that Petitioner
19 failed to establish a colorable claim, the PCR court observed:

> Rule 32 counsel asserts that an earlier evaluation of the Defendant's mental state might have provided basis for a diminished capacity defense under *State v. Christensen*, 129 Ariz. 32 (1981). That assertion overlooks not only what the cited case stands for but also what was discovered through the Rule 11 process in this case. *Christensen* does not actually stand for the proposition that Arizona recognizes a diminished capacity defense. It simply holds that a defendant's tendency under stress to act more reflexively than reflectively may be relevant to determine whether he acted with premeditation and that expert testimony establishing such tendency should be admissible. Rule 32 counsel actually cites one of the Rule 11 mental health expert's finding of impulsivity on the part of the Defendant, affirming that the Rule 11 process did yield information about the Defendant's mental state to enable a claim to be made that he did not act with premeditation. Rule 32 counsel is not claiming that trial counsel was ineffective for failure to use the information gained through the Rule 11 process but that he was ineffective for failing to

- 9 -

obtain such information in a timely manner. The record does not support this claim.

(Dkt. 32, Ex. N at 4-5.)[3] The court further found that nothing in Dr. Briggs's report indicated that a timely examination by that expert would have yielded results favorable to the defense.

Petitioner takes issue with the state court's finding that Dr. Briggs's conclusions were no more favorable than that of two pre-trial examiners who evaluated Petitioner for purposes of determining both his state of mind at the time of the offense and his competency for trial. (ROA doc. 17, 27; RT 7/25/97 at 83)[4] He asserts that Dr. Briggs found Petitioner to be impulsive and, therefore, the state court wrongly concluded that this report did not support his claim. (Dkt. 56 at 9; Dkt. 61 at 4.) Petitioner's argument ignores the fact that one of the pre-trial examiners also described Petitioner as "impulsive," as he stated in his PCR petition.

In any event, Petitioner's argument concerning the PCR court's ruling fails to address the pertinent aspect of this Court's order denying his motions for evidentiary development – that he had an opportunity during PCR proceedings to develop evidence of FASD-related impairment and failed to do so. Petitioner concedes that PCR counsel was aware, through trial counsel's investigator, of Petitioner's mother's *in utero* exposure to drugs and alcohol. PCR counsel requested and obtained the services of a neuropsychologist, who also noted this pertinent history but whose testing failed to reveal any significant neuropsychological impairment or cognitive dysfunction. It is difficult to fault the state court for Petitioner's

---

[3] Petitioner notes that the complete reports of the Rule 11 examiners, Dr. Kaperonis and Dr. Daniel Malatesta, Ed.D, are filed under seal at Document Number 35 of the Mohave County Superior Court. Although the copy of the record received by this Court references the sealed filing, the reports themselves were not actually included. The Court does not find that review of the reports is necessary to disposition of the instant motion; however, to ensure a complete record for merits review of Petitioner's claims, the Court will direct Respondents to file copies of these reports.

[4] "ROA doc." refers to the two-volume Record on Appeal containing consecutively-numbered pleadings prepared by the Clerk of the Mohave County Superior Court for Petitioner's direct appeal to the Arizona Supreme Court (Case No. CR-98-0510-AP; filed Jan. 8, 1999). "RT" refers to the reporter's trial transcript.

- 10 -

failure to develop the FASD-related evidence he has now obtained in these proceedings (specifically, a new expert's report based solely on a review of records and two childhood photographs of Petitioner), especially in light of Petitioner's failure to even argue the FASD grounds for this claim in his PCR petition. The Court finds no basis to reconsider its ruling denying evidentiary development of this claim.

Based on the foregoing,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Reconsideration (Dkt. 56) is **DENIED.**

**IT IS FURTHER ORDERED** that Respondents shall file under seal copies of the reports of Drs. Malatesta and Kaperonis within ten days of this Order.

DATED this 4th day of December 2006.

*/s/ Neil V. Wake*
Neil V. Wake
United States District Judge